This is a test run of the GKN Automotive v. GKN Automotive Ltd. Sorry. May it please the court? I'm Linda Meadows. I am representing GKN, the patent owner and the appellee in this matter. And I understand since the appellant petitioner did not address the substantive issues that I would be not able to address them in response and I should be limited to standing. Is that accurate? We may have some questions. If you have questions, procedurally you're correct, but we get to violate those procedures if we want to. Okay, but I can't. So I get that. Alright, but to the extent that I understand that is the procedure, I'm happy to answer any questions. And if you don't have questions on specific things, then I also would rest on the brace, which I think are pretty clear. So what about this 492 patent? What is your client's position as to whether the concept reflected in the 492 patent would infringe your patent? Okay, so until this point, the client has been pretty much in the dark about what their product would be. But you don't have the 492 patent, right? The 492 patent is really addressed to various hydraulic improvements. And I don't know how they are combining the concepts in there to basically say that it could infringe. We haven't evaluated the patent for infringement of the 440. GKN hasn't done that. There was no reason to because throughout the proceedings below, their product was never at issue. It's not in the record. There's a problem here that we have in these cases where we have standing issues that aren't explored and can't be explored at the board level. And it comes up to us and all of a sudden, we don't have a record that's before us as to the relevant facts concerning standing. And what we said is that the petitioner who's trying to appeal should put in affidavits. They put in affidavits. But how do we find out what your position is with respect to a proposed product and whether there would be infringement? In other words, your position as to whether there would be injury. How do we find out about that procedurally? You say your client hasn't analyzed it. Can we require your client to analyze it? Well, Your Honor, the petitioner has the burden of proof, obviously. And if they haven't met the burden of proof and if you look at the nebulous declarations, they actually said, to be clear, if I want to... And we can't find out what your position is? Well, it depends on how far they've met their burden of proof or if they've identified a product. And what I was going to point to was if you look at paragraph 8... They've identified a concept here, right? They haven't identified a concept, but they've also said that their patent isn't their product. They've said that in paragraph 8 at APPX 1634. They say, to be clear, this patent does not depict any existing JTAC product. It says it details some concepts, but it's unclear as to how those will be combined. It's unclear that it will ever be combined because if you actually look at the one document from May 2016 that they attached, it's pretty clear that they hadn't sold it yet in May 2016. This is the only business record and that's APPX 1732 is the actual site. And they talk about getting the customer relationships. And there's so many contingencies depending on whether or not they get a particular type of vehicle. Let me give you a hypothetical. Suppose they had said that our product is going to embody the concept that's in the 492 patent. Let's suppose they said that. And how could we find out whether that embodiment of the 492 patent would, in your view, be infringing? How do we find that out? Your Honor, if you recall, in this case, and there have been a couple of other cases, I know that there's a case, Momenta, that's pending. I know that Leap Hold was decided. And in all of these cases since Phigenics, including Phigenics, which was after Consumer Watchdog, there were motions filed, a motion to dismiss, and that was responded to. And then there would be a reply. So if in those circumstances there would be a situation, if there was a specific concrete product, that prima facie showing, if it existed, could be rebutted. And maybe then the patent owner would have some burden to come back with some evidence that it either infringes or not infringes or what have you. But in the stance that we're in, there's no reply. They put it in. We respond. And we are speaking hypothetically because I don't believe that there would have been anything to analyze in this case. When they say that the patent is not our product, these concepts... They don't say the patent is not our product. What they say, and what you pointed to, is that there isn't any current product that embodies the patent. And then it says there are details or concepts that are likely to be included and in what combination, you don't know. And then they say in footnote three of their reply brief that until they have a customer and until those customers combines it with their product, there would be nothing to analyze. And I will say this, too, is when you have a patent, if they point it to a specific embodiment, that would be one thing. But if they say various concepts... So right now, the only thing I keep hearing is twin-clutch concept. Twin-clutch concept is not a product. Does that include the differential? Are they removing the differential? Are they dealing with transverse, power-dividing distributions? Are they dealing with the longitudinal ones? None of that is there to analyze. So I'm speaking hypothetically, talking about the motions, noticing that in those other cases, that that was a process that might avoid dealing with the substantive issues unnecessarily for dismissal. But I think that in this case, it's not that different than in LeapPult, which was dismissed. The Cross-Appeal was dismissed. That was a situation where there was a concrete product that could be analyzed. But there were problems because it was used in Europe. And there was still commercialization partners that need to be found in the U.S. And that was dismissed for a lack of an injury in fact, which is still the constitutional minimum. Regardless, it is an issue, first off, how far below DJ standing you go in these circumstances. And then how much evidence do you need to provide? And Phygenics raised both of those. But in LeapPult, there was contingencies that would occur depending on the customers in the U.S. And that's kind of the same situation we have here. Was that an opinion, that case you're referring to? Was that an opinion? It was an opinion that there was no actual injury in fact. And I recognize I draw the facts from the briefs because when there's very little precedent, you have to take it where you can get it. But it was dismissed. It was an opinion that came out in April 13th, I believe, in 2018. And it was the cross appeal that was dismissed. The patentee actually appealed the adverse findings of the PTAP and they were cross appealed by the petitioner where there was no standing. For that, even though they had a concrete product, it was a known product, but they didn't have it in the U.S. and they didn't quite have the commercialization partners in place. And that's the same situation. And as I pointed out in APPX, the document with the APPX 1732, that's the one where it shows that they don't have the customer relationships defined. They referenced that in their reply brief. And until they have that, there's no product to be analyzed. And regardless of how much you relax certain things like redressability, an actual injury in fact is still a constitutional minimum floor. So that doesn't change. And so it can't be based on conjectural hypotheticals, which makes it not imminent. And here it is conjectural because there are a lot of things that have to happen. I mean, there's a highly attenuated chain of possibilities, including development, testing, developing a customer base, determining what kind of vehicle it's going to be on, because differentials are still cheap, reliable, easy. And so for some vehicles, that's going to be put in place. So until that's all done, it's not determined what the product is going to be. All of which could result in a change to the product independent of the PCAP decision. And it appears in this case that rather than having an advisory opinion on a specific product, it's really an advisory opinion from the appellate court to leave all possible development avenues open because they don't have the customer base defined. And when they talk about money spent, I didn't see any tie to the specific concept. I mean, or any specific concept that would be tied to the patent. So there was a lot of vagaries involved in the declarations. One thing that was mentioned was that whether there was policy arguments of what the law should be versus what the law is. And there are times that Congress has created an artificial infringement, for example, and on the Hatch-Waxman Act. I mean, that's up to them to determine at what level. But I think that it's up to a petitioner. If they're developing a product and they want an opinion, there were processes before, like re-examinations. You could do an ex parte re-examination, put it out there, and the patentee would deal with it, and you couldn't be involved. Some people chose to do that, and some people chose not to. Some people can get a written opinion from a lawyer, and they make their decisions for development based on that. Done a few of them. So it depends. These are choices that's completely in their hands, that are independent of the patent owner, and these are avenues that can be pursued. And if they do pursue an IPR, the important thing is that if they may have to recognize that you can't appeal it, that you have a benefit, because now you have a PTAB decision, verifying or not verifying whatever your attorney's opinion was. But if you do it too early in the process, you won't be able to appeal it. On standing, do you have any other questions or anything on the substantive issues? Okay. Thank you. First, I would like to address Judge Duck's question. Based on the face of the 492 patent, we do not believe that the 440 patent is of record. So I wanted to clarify that. I would also like to address the issue of whether or not there are specific facts creating a nexus between the concept of the 492 patent and claims 2 and 3 of the 440 patent. I do believe that paragraphs 22 to 25 on pages 1644 and 1645 of the appendix do that. There, we make clear, or I should say the declarant made clear, that the 492 patent is a four-wheel drive or discloses a four-wheel drive disconnect concept where the secondary drivetrain can be disconnected from the primary drivetrain when not in use through the use of twin clutches on the side shafts. So we have specificity regarding what that concept is. It is not as broad as been characterized by the appellee. The declarant goes on to say that based on his knowledge, his personal knowledge, that the concept illustrated in the 492 patent and the fact that the twin clutch aspect is likely to remain in any product, his comparison of claims 2 and 3 and that concept create a risk for JTAC. And then he goes on and compares. The first sentence in paragraph 23 says because JTAC has not yet developed a final product, there is nothing that can be analyzed for infringement. This is true. But there have been steps taken to pursue, monies have been spent to pursue the concept of the 492 patent. And that does create an injury. And there are specified dates for a product which would embody those concepts. And I'd also be remiss if I didn't discuss the impact of IPR estoppel here. I believe having advanced the fact pattern at least beyond what consumer watchdog and phyogenics that the impact of JTAC no longer having the right to argue before the PTO or in civil proceedings or otherwise, patentability issues based on prior art patents and printed publications creates an injury in itself as well. Haven't we said otherwise? If there's no injury in fact. You said otherwise. But you said if there is an injury in fact in PP. Yeah, but the estoppel is not the factor that would give you standing here. But you said it could enhance the issue if there is an injury in fact. If there is an injury in fact, yes. So I have nothing further, Your Honors. Thank you. We thank both sides in the cases.